IN THE UNITED IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CARLOS ANDINO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No.: 23 cv 14283 |
| | ) | |
| REYNALDO GUEVARA, GERI LYNN | ) | |
| YANOW, as SPECIAL REPRESENTATIVE | ) | |
| for ERNEST HALVORSEN, RONALD | ) | |
| KONCZ, WILLIAM JOHNSTON, | ) | |
| EDWARD MINGEY, JOHN | ) | |
| SANTOPADRE, JOE | ) | |
| RODRIGUEZ, EDDIE WIORA, UNKNOWN | ) | |
| CHICAGO POLICE OFFICERS OF THE | ) | |
| CHICAGO POLICE DEPARTMENT, and the | ) | |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MOTION TO RECUSE

## TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................................. i

TABLE OF AUTHORITIES .......................................................................................................... ii

INTRODUCTION ........................................................................................................................... 1

RELEVANT BACKGROUND ....................................................................................................... 1

    A.  The *Almodavar Case* ..................................................................................................... 4

    B.  The *Serrano* Case And Your Honor's Recusal ............................................................. 7

    C.  The *Gecht* Case And Your Honor's Recusal ................................................................ 8

LEGAL STANDARD ................................................................................................................... 12

ARGUMENT ................................................................................................................................ 13

    Your Honor Should Recuse Under Either Section 455(a) or 455(b)(1) ......................... 13

        A.  Recusal Under § 455(b)(1). ..................................................................................... 14

        B.  Recusal Under § 455(a). .......................................................................................... 17

CONCLUSION ............................................................................................................................. 19

## TABLE OF AUTHORITIES

**Authority from the Supreme Court of the United States**

*Liteky v. U.S.*,
510 U.S. 540 (1994) ...............................................................................................................12, 13

*United States v. Agurs*,
427 U.S. 97, 114 (1976) ................................................................................................. 15

**Authority from the Circuit Courts of the United States**

*Brokaw v. Mercer County*,
235 F.3d 1000 (7th Cir. 2000) ..................................................................................... 12

*Deng v. Sears, Roebuck & Co.*,
552 F.3d 574 (7th Cir. 2009)......................................................................................... 14

*Durhan v. Neopolitan*,
875 F.2d 91 (7th Cir. 1989)........................................................................................... 12

*Grove Fresh Dist., Inc. v. John Labatt, Ltd.*,
299 F.3d 635 (7th Cir. 2002)......................................................................................... 12

*Hoffman v. Caterpillar, Inc.*,
368 F.3d 709 (7th Cir. 2004)......................................................................................... 15

*Hook v. McDade*,
89 F.3d 350 (7th Cir. 1996)........................................................................................... 12

*Jimenez v. City of Chicago*,
732 F.3d 710 (7th Cir. 2013)......................................................................................... 12

*Pepsico, Inc., v. McMillen*,
764 F.2d 458 (7th Cir. 1985)......................................................................................... 12

*SCA Servs. v. Morgan*,
557 F.2d 110 (7th Cir. 1977)......................................................................................... 12

*U.S. v. Hatcher*,
150 F.3d 631 (7th Cir. 1998)......................................................................................... 12

*U.S. v. Herrera-Valdez*,
826 F.3d 912 (7th Cir. 2016)......................................................................................... 12

*U.S. v. State of Ala.*,
828 F.2d 1532 (11th Cir. 1987)..................................................................................... 13

**Authority from the District Courts of the United States**

*Almodovar v. Guevara, et al.,*
18 CV 2341 ...................................................................................................................... 7

*Bass v. Hansen,*
2011 WL 1337092 (N.D. Ill. 2011) ............................................................................... 14

*Fairley v. Andrews,*
423 F. Supp. 2d 800 (N.D. Ill. 2006) ............................................................................ 18

*Gecht v. Guevara, et al.,*
23 CV 1742 ...................................................................................................................... 1

*Payne v. Maher,*
2015 WL 4483954 (N.D. Ill. 2015) ............................................................................... 15

*Serrano v. Guevara, et al.,*
17 CV 02869 ..................................................................................................................... 1

**Authority from the Illinois Supreme Court**

*Swick v. Liautaud,*
169 Ill.2d 504 (1996) .................................................................................................... 14

**Authority from the Illinois Appellate Courts**

*Aguirre v. City of Chicago,*
382 Ill. App. 3d 89 (1st Dist. 2008) .............................................................................. 15

*People v. Almodovar,*
2013 IL App (1st) 101476 (1st Dist. 2013) .................................................................... 4

## Statutes

28 U.S.C. § 455(a) ..................................................................................................... *passim*

28 U.S.C. § 455(b)(1) ................................................................................................ *passim*

NOW COME Defendants, REYNALDO GUEVARA, WILLIAM JOHNSTON, GERI LYNN, YANOW as SPECIAL REPRESENTATIVE for ERNEST HALVORSEN, deceased, RONALD KONCZ, EDWARD MINGEY, JOHN SANTOPADRE, JOE RODRIGUEZ, EDDIE WIORA, and the CITY OF CHICAGO ("Defendants"), by and through their respective attorneys, and pursuant to 28 U.S.C. § 455(a) and § 455(b)(1), respectfully move Your Honor to recuse himself in this case. In support thereof, Defendants state as follows:

## INTRODUCTION

Your Honor previously recused himself pursuant to 28 U.S.C. § 455(a) in two other civil cases (*Serrano v. Guevara, et al.*, 17 CV 2869 and *Gecht v. Guevara, et al.*, 23 CV 1742) filed against the same central Defendants in this case, specifically Defendant Guevara and Defendant Halvorsen and Defendant City of Chicago, as a result of Your Honor's past extrajudicial involvement as a private attorney representing an individual named Roberto Almodovar who made similar allegations against Defendant Guevara and Defendant Halvorsen. *See* Ex. 7 (06/29/17 transcript of proceeding in *Serrano v. Guevara et al.*, No. 17 CV 2869); Ex. 11 (07/17/23 transcript of proceeding in *Gecht v. Guevara, et al.*, 23 CV 1742). The reasons for recusal articulated by Your Honor in the *Serrano* and *Gecht* cases apply to this case. As set forth below, Defendants respectfully request Your Honor recuse himself from this case and refer this matter back for random reassignment to another district court judge in this District.

## RELEVANT BACKGROUND

On September 29, 2023, Plaintiff, Carlos Andino ("Plaintiff"), filed the above-captioned lawsuit against Defendants Reynaldo Guevara, William Johnston, Geri Lynn Yanow as Special Representative for Ernest Halvorsen, Deceased, Ronald Koncz, Edward Mingey, John Santopadre, Joe Rodriguez, Eddie Wiora, and the City of Chicago. *See* Dckt. No. 1. Plaintiff alleges that Defendants conspired to frame Plaintiff for the 1994 murder of Mark Dibicki. *Id.* at ¶¶ 2, 20. In particular, Plaintiff alleges that Defendants, including specifically Defendant Guevara and Halvorsen, "manipulated false

1

identifications" from several eyewitnesses and "pressured, manipulated, and ultimately coerced" these witnesses into falsely identifying Plaintiff as the offender in the Dibicki murder. *Id.* at ¶ 5.

Much like the *Almodovar* case, discussed below, Plaintiff's allegations against Defendant Guevara and Halvorsen rely heavily upon the supposed manipulation of eyewitnesses in order to procure inculpatory statements. *See* Dckt. No. 1 at ¶¶ 5, 7-8, 31, 39-51, 58-59, 74, 93. In fact, Plaintiff alleges the fact pattern in Almodovar of a witness supposedly being shown a photograph of a perpetrator before an identification as a means of manipulation as a factual theory in this case. *Id.* at ¶ 5 ("The Defendant Officers manipulated false identifications from three young children, all siblings by showing the children a photo of the Plaintiff and telling them that Plaintiff was the offender."); *id.* at ¶ 7 ("The Defendant Officers concealed that Gang Crimes North officers Rodriguez and Wiora actually suggested Plaintiff as the target of a frame-up and provided Defendants Guevara and Halvorsen a photo of him to use to manipulate the witnesses."); *id.* at ¶ 31 ("The Defendant Officers concealed the fact that Rios looked at mug books with photos of Plaintiff and that she did not identify him as the offender."); *id.* at ¶ 39 ("Defendants Rodriguez and Wiora provided Defendants Guevara and Halvorsen with a photo of the Plaintiff. Armed with a photo of Plaintiff, Defendants Guevara and Halvorsen went to the home of the Smith children and showed them the photo, telling them that the person depicted in the photo was the offender. Even after the children insisted that they recalled that the shooter had a teardrop tattoo on his face, Defendants Guevara and Halvorsen reassured the children that he was the offender and that they would just have to pick up him out of a line-up."); *id.* at ¶ 41 ("Defendants Guevara and Halvorsen also showed the photo of Plaintiff to Theresa Rio prior to having her look at a line-up, telling her that Plaintiff was the perpetrator of the shooting."); *id.* at ¶ 45 ("The prosecution's case against Plaintiff hinged entirely on fabricated evidence, namely false identification evidence. Defendant Guevara testified before the grand jury that the Smith children and Rios had identified the Plaintiff but failed to disclose that he manufactured those identifications by showing the witnesses a photo of Plaintiff and rigging the line-up with other Defendants to secure a

false identification of Plaintiff."). To that end, Plaintiff explicitly refers to the *Almodovar* case as evidence supporting his claims in this case as well as numerous other like cases. *Id.* at ¶¶ 88, 93

Further, as in *Gecht*, also discussed below, Plaintiff's post-conviction petition relied explicitly upon Defendant Guevara's supposed "pattern and practice of manipulating eyewitness identifications" in other cases as well. Ex. 13 (Pl.'s Pet. Post-Conv. Relief) at ¶¶ 76; 77 ("Upon learning that courts had found that Guevara engaged in a long practice of investigative misconduct, including framing innocent men through the use of bogus identifications, Petitioner set about trying to investigate whether Guevara had engaged in such conduct in his case."); *id.* at ¶¶ 94-149.

The *Almodovar* case is among the cases Plaintiff relied upon in establishing this alleged pattern and practice of Defendant Guevara. Ex. 13 at ¶¶ 112-115, 166. In fact, Plaintiff attached several evidentiary exhibits from the *Almodovar* matter in furtherance of this theory including, most notably, testimony of Mr. Saez. *See* Ex. 13 at Ex. U This testimony (which, again was attached as an actual exhibit to Plaintiff's post-conviction petition) specifically referenced the circumstances of Mr. Saez's post-trial recantation affidavit and referenced Your Honor by description in that same testimony. Ex. 13 at Ex. U at 37:19-41:10.

This Petition also attaches and explicitly relies upon the above-described reports conducted by Sidley Austin LLP as well its conclusions about, in particular, Almodovar. Ex. 13 at Ex. KK. These materials include repeated references to Your Honor regarding involvement in the *Almodovar* case in general and obtaining Mr. Saez's statement in particular. *Id.* at 3 ("Sidley conducted eleven interviews in the course of its investigation of the *Almodovar* case. Specifically, Sidley interviewed defendant Roberto Almodovar, his former counsel Melissa Power and Judge Matthew Kennelly..."); *id.* at 8 ("Almodovar's counsel at the time, Matthew Kennelly, argued that Detective Guevara had improperly influenced the eyewitness identifications—the sole basis for the convictions."); *id.* at 9 ("In February 1996, Saez again changed his story in a statement to an investigator sent by Almodovar's post-trial counsel, Matthew Kennelly. Saez told the investigator that, before he viewed the line-up, an officer

showed him pictures of Almodovar and Negron. Kennelly later obtained a sworn statement from Saez in August 1998 in which Saez stated that, three or four days after the shooting, Grande came by his apartment and told him that a police officer wanted to meet with him."); *id.* at 10 ("Sidley interviewed Saez in July 2014 and he recounted the same core facts reflected in his sworn statement with Kennelly described above.").

Plaintiff also relied upon the findings of the report completed by Sidley Austin LLP, which Plaintiff alleges concluded, based on the investigation which included the interview with Your Honor, that Almodovar was "most likely innocent." Ex. 13 at ¶ 154. Moreover, similar to the statements attributed to Your Honor, Plaintiff alleges that Defendants Guevara and Halvorsen simply chose a random "gangbanger" to frame for this murder in order to close a case that had turned cold. *Id.* at ¶¶ 9, 34-36. This post-conviction petition was ultimately granted by the Circuit Court of Cook County. *See* Dckt. No. 1 at ¶ 54.

Finally, Defendants have also become aware that, shortly prior to the Cook County State's Attorney agreeing to vacate Plaintiff's conviction, attorneys representing supposed "Guevara victims" were apparently permitted to privately petition the Cook County State's Attorney, Kim Foxx and her high-ranking staff members, with the apparent goal of attempting to persuade them to vacate numerous criminal convictions involving Defendant Guevara. *See* Ex. 14-15. This presentation included Plaintiff's cases as one of the cases sought to be vacated and relied upon the Almodovar case as one of the bases to do so. Ex. 14 at 7; Ex. 15 at 4, 5, 6, 26.

### A. The *Almodovar* Case.

Roberto Almodovar and co-defendant William Negron were convicted of the September 1, 1994 murders of Amy Merkes and Jorge Rodriguez and attempted murders of Jacqueline Grande ("Ms. Grande") and Kennelly Saez ("Mr. Saez"). *People v. Almodovar*, 2013 IL App (1st) 101476, ¶ 6 (1st Dist. 2013). The case against Mr. Almodovar centered primarily around the testimony of the two surviving victims, Mr. Saez and Ms. Grande, and their identification of Mr. Almodovar and Mr.

Negron. *Id.* at ¶ 7. In late 1995 or early 1996, Your Honor (at the time in private practice) was retained

to represent Mr. Almodovar, who at that time had been found guilty of murder but had not yet been

sentenced. *See* Ex. 1 (Deposition transcript of Matthew Kennelly) at 7:16-9:5, 12:13-13:25. Your

Honor represented Mr. Almodovar during his direct appeal and filed a post-conviction petition and

an amended post-conviction petition on his behalf. *Id.* at 88:15-24, 89:20-25. While representing Mr.

Almodovar, Your Honor's investigator obtained a post-trial statement from Mr. Saez stating that a

police officer (later identified as Defendant Guevara) showed him photographs before a lineup in

which Mr. Saez identified Mr. Almodovar. *See* Ex. 1 at 42:13-43:16, 44:11-19. Your Honor spoke to

Mr. Saez directly regarding this and was present for this statement which occurred at Your Honor's

law office. *Id.* at 44:11-45:13.

During Your Honor's representation of Mr. Almodovar, Your Honor filed a motion for a new

trial. Ex. 1 at 14:11-15. Your Honor, on behalf of Mr. Almodovar, argued among other things, that

the State failed to produce *Brady* material that would have demonstrated Defendant Guevara lied about

the circumstances of Mr. Saez's identification and that there were suggestive influences on Mr. Saez.

*See* Ex. 2 (02/20/96, Defendant's Post Trial Motion in *People v. Roberto Almodovar*, No. 94 CR 24318-

01) at 23. Specifically, Your Honor also argued in that motion that Defendant Guevara falsified a

police report and lied when he testified at Mr. Almodovar's criminal trial that he had never shown

photographs of possible offenders to Mr. Saez. *Id.*

In the amended post-conviction petition that Your Honor filed on behalf of Mr. Almodovar,

Your Honor again asserted that the prosecution violated *Brady* because it failed to produce evidence

undermining the credibility of Guevara and shown that Guevara "engaged in a concerted effort to

influence the identifications made by Saez and [Jacqueline] Grande and had then attempted to conceal

this effort by preparing a false police report (stating that no photographs had been shown to Saez

prior to the lineup)." *See* Ex. 3 (Amended Petition For Post-Conviction Relief in *People v. Roberto

Almodovar*, No. 94 CR 24318-01) at ¶ 31. Your Honor also asserted that Mr. Saez's sworn statement

5

(which, again, was obtained by Your Honor and Your Honor's investigator) established that "Detective Guevara testified falsely under oath at trial as to a material matter…" *Id.* at ¶ 31.

Moreover, according to Gecht, Sidley Austin led by its partner Scott Lassar investigated, at the request of the City of Chicago, some of the murder cases in which Defendant Guevara was involved including the investigation involving Mr. Almodovar. *See* Ex. 4 (Successive Petition for Post Conviction Relief in *People v. David Gecht*, No. 99 CR 7227) at ¶ 159. In November 2013, Your Honor was interviewed by Sidley Austin attorneys and the attorneys generated a report of the interview. *See* Ex. 5 (Individual Officer Defendants' Motion for Recusal in *Serrano v. Guevara et al.*, No. 17 CV 2869, Dckt. 27-1) at 2-3. The report states, in relevant part, that Your Honor related that "Guevara's modus operandi was to pick a fall guy and get witnesses to go along with him" and "[Guevara] just wanted to close cases and to him, it didn't really matter which gang banger he arrested and had charged with the crime because they had all done something." *Id.* at 3. [1] In the 2013 interview with Sidley Austin attorneys, a statement was also attributed to Your Honor to the effect that there was "no doubt" that Mr. Saez was "pushed" by Defendant Guevara into making an identification. *Id.* at Ex. A at 2. Moreover, according to this summary, Your Honor stated that Your Honor had interviewed Mr. Saez personally and had found him to be credible. *Id.* Your Honor also reportedly stated that Your Honor was "pretty convinced" that Mr. Almodovar was not guilty. *Id.*

Mr. Almodovar's attempt to challenge his conviction was eventually successful and he was released from prison and his conviction vacated. *See* Ex. 6 (First Amended Complaint in *Almodovar v.*

---

[1] As for the report summarizing Your Honor's November 2013 with Sidley Austin, Your Honor has stated that the report inaccurately attributes statements and that Your Honor did not provide opinions during the interview regarding Defendant Guevara's modus operandi. *See* Ex. 7 at 14:18-16:16; Ex. 11 at 4:24-5:15. Your Honor further relayed that it was possible that Your Honor may have shared Almodovar's family members opinions about Defendant Guevara's modus operandi during the interview but that Your Honor did not convey any personal opinion of Defendant Guevara. *Id.* Nonetheless, the fact remains that this document at least appears to attribute this statement to Your Honor not Almodovar's family and, whether accurate or not, could potentially be used as a prior statement in the event the *Almodovar* matter becomes a disputed piece of evidence in this case. In addition, it demonstrates extrajudicial knowledge Your Honor has about allegations in this case.

*Guevara et al.*, No. 18 CV 02341) at ¶ 6. Mr. Almodovar later filed a civil lawsuit against Defendant Guevara, Defendant Halvorsen and several others arising from their work on his underlying criminal investigation. *Id.* In that lawsuit, Mr. Almodovar made wide ranging allegations of misconduct against Defendant Guevara and Defendant Halvorsen including, but not limited to, that they were involved in "fram[ing] Plaintiff for the murders by knowingly inducing false identification testimony from the young and traumatized victims of the crime through trickery, manipulation, suggestion, pressure, coercion, and other unlawful tactics" (*id.* at ¶¶ 3, 43-45, 51), "conceal[ed] and fabricate[d] evidence, manipulate[d] witness testimony, and maliciously prosecute[d] Plaintiff" (*id.* at ¶ 16), and procured false witness statements via suggestive identification procedures and other malfeasance and manufactured false inculpatory statements from Plaintiff himself (*id.* at ¶¶ 52-53, 55-58).

In 2021, Your Honor was deposed in Mr. Almodovar's civil case. During the deposition, Your Honor testified that, in 1998, Your Honor was prompted to file a post-conviction petition on behalf of Mr. Almodovar mainly because Mr. Saez recanted his identification and claimed that he had "been sort of buffaloed into identifying Mr. Almodovar as the shooter" by Defendant Guevara. Ex. 1 at 42:13-43:3. When Your Honor was asked what he meant by the term "buffaloed," Your Honor testified that the "best way of describing [buffaloed] is basically look up what I alleged in the post-trial motion and post-conviction petition. That was just kind of a shorthand reference to cover the whole range of conduct." *Id.* at 87:1-88:9. Mr. Almodovar's civil case remains pending in the Northern District of Illinois. *See Almodovar v. Guevara, et al.,* 18 CV 2341.

**B.    The *Serrano* Case And Your Honor's Recusal.**

In April 2017, Armando Serrano filed a civil lawsuit, which was randomly assigned to this Court, against Guevara, Halvorsen and others in which he alleged that the defendants coerced a witness to testify that Serrano confessed to the witness about his role in the underlying murder. *See* Complaint in *Serrano v. Guevara et al.*, No. 17 CV 2869, Dckt. 1 at ¶ 1. As in this case, the *Serrano* Complaint specifically referenced Mr. Almodovar, the Sidley Austin investigation, and allegations of

Defendant Guevara's misconduct in obtaining false witness identifications and false confessions in several other cases. *Id.* at ¶¶ 809, 57-68, 73-125, and fn 1. As a result, some of the defendants in the *Serrano* matter (including Guevara and Halvorsen) filed a motion to recuse Your Honor pursuant to 28 U.S.C. § 455(a) and § 455(b)(1). *See* Ex. 2.

Your Honor denied the motion as moot and determined *sua sponte* that recusal was appropriate because there was a "reasonably good chance" that "something having to do with the admissibility of evidence from the Almodovar case would come up" in the *Serrano* case. *See* Ex. 7 at 13:2-18. In so ruling, Your Honor found that he has "knowledge regarding the Almodovar case from representing Mr. Almodovar as counsel, and for that reason, I don't think that I could be perceived by a reasonable observer as able to impartially decide the admissibility of that evidence, so I think recusal is appropriate under Section 455(a)." *Id.* This ruling was made within the context of defendants' assertions that, in the event the plaintiff attempted to admit any Fed. R. 404(b) evidence against Detective Guevara, they might offer evidence relating to the *Almodovar* case even if the plaintiff elected not to do so because the *Almodovar* case may shed light on the questionable nature of this pattern and practice evidence as a whole. *Id.* at 5:21-13:1. In particular, defense counsel pointed to the questionable nature of Mr. Saez's repeated changes in stories (including the one Your Honor was privy to) as matters that the defense may need to introduce as evidence. *Id.*

C. **The *Gecht* Case And Your Honor's Recusal.**

In March 2000, David Gecht ("Gecht") was convicted of the January 29, 1999 murder of Roberto Cruz. In May 2022, Gecht's conviction was vacated and the charges dropped. On March 21, 2023, this lawsuit was filed by Gecht against Reynaldo Guevara, Geri Lynn Yanow, as special representative of the Estate of Ernest Halvorsen, Alan Pergande, Michael Muzupappa, Robert Rutherford, Edwin Dickinson, Francis Cappitelli and the City of Chicago as well as several former Assistant State's Attorneys from the Cook County State's Attorney's Office and Cook County. *See* Ex. 12. This case was randomly assigned to Your Honor.

Gecht claimed that Defendant Guevara, Defendant Halvorsen along with the other Defendants essentially framed him for his involvement in the Cruz murder. *See Id.* The alleged misconduct included specific claims that Defendant Guevara, Defendant Halvorsen and other Defendants extricated an allegedly coerced incriminatory statement from Gecht using various allegedly coercive techniques such as physical abuse, deprivation of food and sleep, denial of access to a telephone call, denial of access to an attorney, feeding him information about the facts of the crime, and misrepresenting to Gecht that he could "go home" if he signed an incriminating statement. *Id.* at ¶¶ 40-57. Moreover, Gecht alleged that Defendants extricated false statements from other persons implicating Gecht in the Cruz murder. *Id.* at ¶¶ 58-76. This included not only two other alleged participants in the crime but also Gecht's girlfriend who claims Defendants compelled a false statement that Gecht had confessed to his involvement to her by threatening to charge her as an accessory to the crime and take away her child. *Id.*

Gecht claimed that these Defendants fabricated evidence, "procured supposed eyewitness identifications of [Gecht], which they knew to be false and unreliable, using unduly suggestive procedure," withheld exculpatory evidence "including evidence that that Defendants had manufactured false identifications of [Gecht]," coerced a confession from Gecht, maliciously prosecuted Gecht, inflicted emotional distress upon Gecht, and other related claims under state and federal law. *See* Ex. 12 at Cts. I-V, VII. Gecht also brought a *Monell* claim against Defendant City based upon an alleged pattern and practice consistent with the above allegations. *Id.* at Ct. VI.

Gecht also referenced "the pattern of misconduct of Guevara and the other Defendants" as evidentiary support for his own underlying claims against both the individual officers (including, but not limited to Defendant Guevara and Defendant Halvorsen) and against the City of Chicago as part of his putative *Monell* claim. Ex. 12 at ¶ 3 ("Because of the ample evidence Defendants fabricated and suppressed in order to frame [Gecht] for the Cruz murder, and because Defendants successfully hid the pattern of misconduct of Guevara and the other Defendants, [Gecht]'s cries were ignored."); *id.*

9

at ¶ 9 ("[T]he misconduct resulting in [Gecht]'s wrongful conviction was part of a now well-known pattern of illegal activity perpetrated by Defendants Guevara, Halvorsen and the other Defendants."); *id.* at ¶ 10 ("[Gecht] is one of at least 39 men and women who have had convictions on murder charges vacated after being framed in corrupt homicide investigations conducted by Defendant Guevara and his fellow Area Five detectives and supervisors."); *id.* at ¶ 12 ("Cook County courts have found that 'Detective Guevara engaged in a pattern and practice of intimidating, threatening, and influencing witnesses in prior homicide investigations,' and that Defendant Guevara had told 'bald-faced lies' during court testimony and had 'eliminated any possibility of [] being considered a credible witness in any proceeding.'"); *id.* at ¶¶ 114, 126-133.

The alleged misconduct by Defendant Guevara and others that Gecht alleged he intended to rely on to prove his claims included "obtaining false eyewitness identifications through manipulated identification procedures, manipulating witnesses, fabricating evidence, suppressing exculpatory evidence, and coercing false confessions and false statements from suspects and witnesses using physical and psychological violence, all in the course of maliciously prosecuting innocent persons." *Id.* at ¶ 128. To this end, Gecht specifically referenced the *Almodovar* matter as a possible source of evidentiary support for his underlying claims (both his individual liability claims presumably as putative Fed. R. Evid. 404(b) evidence as well as support for his *Monell* claim). *Id.* at ¶ 127.

Moreover, in seeking post-conviction relief in his underlying criminal case, Gecht specifically relied upon the *Almodovar* case and the allegations therein as a basis for seeking to have his conviction overturned as a result of Defendant Guevara's purported pattern of misconduct in other cases. Ex. 4 (Gecht's Pet. For Post-Conviction Relief) at ¶¶ 87-90, 98, 115, 123-125, 159, 200, 208. As noted above, this post-conviction relief was eventually granted and Gecht's conviction vacated. Indeed, the sole reason cited by the trial court in overturning this conviction was its finding that Defendant Guevara "engaged in a pattern and practice of misconduct." *See* Ex. 8 (Order Granting Post Conviction Relief) at 15-25. The trial court did not even rule upon Gecht's claims of actual innocence or claims of a *Brady*

violation. *Id.* In other words, the entirety of the disposition of the post-conviction motion (which eventually lead to a dismissal of charges) was based upon pattern and practice allegations in *other* cases. *Id.* Similarly, in petitioning for a Certificate of Innocence ("COI"), Gecht again made specific references to Defendant Guevara's alleged misconduct in other cases and incorporated previous post-conviction pleadings (which referenced the *Almodovar* matter) as evidence supporting his award of a COI. *See* Ex. 9 (Gecht's Pet. Cert. Inn.) at ¶¶ 2, 5. This COI was granted.

As in *Serrano*, the defendants in *Gecht* (including Defendants Guevara and Halvorsen and Defendant City of Chicago) filed a motion to recuse Your Honor and both 28 U.S.C. § 455(a) and 455(b)(1). *See* Ex. 10. Gecht had specifically implicated the *Almodovar* case as possible evidence of pattern and practice and putative Fed. R. Evid. 404(b) evidence in his complaint. Moreover, Defendants argued that even if Gecht had not done so (or withdrew such evidence), that Defendants intended to rely upon evidence from the Almodovar case in order to rebut any pattern or practice evidence or other Fed. R. Evid. 404(b) evidence. *Id.* at 11-12.

Defendants also argued that, because Gecht's post-conviction proceedings (and the disposition thereof) explicitly implicated other alleged "bad acts" and pattern and practice allegations that involved, among other cases, the *Almodovar* case, that Defendants were placed in a position where they would be *required* to address and rebut these allegations in defending against *Gecht*'s Malicious Prosecution claim. *Id.* at 12-14.

Finally, Defendants argued that the statements attributed to Your Honor (whether true or not) about Defendant Guevara's modus operandi of misconduct satisfied the requirement that a reasonable observer could find Your Honor unable to fairly and impartially preside over a case involving Defendant Guevara making similar allegations under 28 U.S.C. § 455(b)(1). Ex. 10 at 15.

After hearing argument on this motion, Your Honor recused himself from the *Gecht* matter on his own motion. *See* Ex. 11. In particular, Your Honor held that because Gecht's post-conviction proceedings arguably implicated Defendant Guevara's involvement in other cases including the

*Almodovar* case, that that there was a reasonable probability that this evidence could be at issue in Gecht for the purposes. *Id.* at 15:24-16:11. That holding applies to this case as well.

## **LEGAL STANDARD**

Section 455(a) "requires a federal judge to 'disqualify himself in any proceeding in which his impartiality might be questioned.'" 28 U.S.C. § 455(a). The purpose of the provision is to "promote public confidence in the integrity of the judicial process …. [which] does not depend upon whether or not the judge actually knew of facts creating an appearance of impropriety, so long as the public might reasonably believe that he or she knew." *Durhan v. Neopolitan*, 875 F.2d 91, 97 (7th Cir. 1989). Section 455(a) has been termed the "catchall" recusal provision, covering both "interest and relationship" and "bias and prejudice" grounds. *Liteky v. U.S.*, 510 U.S. 540, 548 (1994).

The standard in any case for a § 455(a) recusal is whether an objective, disinterested observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt that justice would be done in the case. *Pepsico, Inc., v. McMillen*, 764 F.2d 458, 460 (7th Cir. 1985); *see also U.S. v. Herrera-Valdez*, 826 F.3d 912, 917 (7th Cir. 2016) ("Under § 455(a), all a party has to show is that a judge's impartiality *might* be questioned by a reasonable, well-informed observer.") (emphasis in original). This is an objective inquiry, *Hook v. McDade*, 89 F.3d 350, 354 (7th Cir. 1996), and "simply requires the reasonable appearance of bias," *Hoffman v. Caterpillar, Inc.*, 368 F.3d 709, 718 (7th Cir. 2004). There is inherent difficulty in applying this standard as a judge is "both [ ] its interpreter and its object." *SCA Servs. v. Morgan*, 557 F.2d 110, 116 (7th Cir. 1977). Observers outside of the judiciary "are less inclined to credit judges' impartiality and mental discipline than the judiciary itself will be." *U.S. v. Hatcher*, 150 F.3d 631, 637 (7th Cir. 1998).

Under § 455(b)(1), a judge must recuse himself "where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(b)(1). Like § 455(a), the inquiry under § 455(b)(1) is evaluated on an objective basis, *Brokaw v. Mercer County*, 235 F.3d 1000, 1025 (7th Cir. 2000), and the inquiry to be made is "whether a

12

reasonable person would be convinced the judge was biased." *Grove Fresh Dist., Inc. v. John Labatt, Ltd.*, 299 F.3d 635, 640 (7th Cir. 2002). "The bias or prejudice must be grounded in some personal animus or malice that the judge harbors… of a kind that a fair-minded person could not entirely set aside when judging certain persons or causes." *Id.* Bias or prejudice means a wrongful or inappropriate negative disposition, such as one based on extrajudicial knowledge or opinions that have no place in a judicial proceeding, or one so extreme that fair judgment becomes impossible. *Liteky*, 510 U.S. at 540. Separately, if a judge learns facts in an extrajudicial capacity which are disputed and may concern the proceeding, recusal is also required under § 455(b)(1). *See U.S. v. State of Ala.*, 828 F.2d 1532, 1545 (11th Cir. 1987) (judge's statements as senator about unresolved vestiges of racial discrimination in education and involvement in civil cases which were being proffered as evidence of the "vestiges" of racial discrimination in education required recusal because evidence of these unresolved vestiges).

The alleged bias sufficient to warrant recusal under both § 455(a) & § 455 (b)(1) must stem from an extrajudicial source. *Liteky*, 510 U.S. at 554. The "extrajudicial source" doctrine requires the judge's perceived bias to derive from a source outside the current or prior judicial proceedings conducted by the same judge. *Id.* at 554-55.

## **ARGUMENT**

### **Your Honor Should Recuse Under Either Section 455(a) or 455(b)(1)**

The same concerns that Your Honor identified in recusing himself from the *Serrano* and *Gecht* cases apply in the present case, and, in fact, the concerns are even more acute here than in either of these past cases. As in *Gecht*, Plaintiff explicitly relied upon evidence of the *Almodovar* case in his post-conviction proceedings and, indeed, Your Honor is mentioned explicitly and by reference in the materials submitted in furtherance of those proceedings. Thus, the reason Your Honor recused himself in *Gecht* applies here and, in fact, is even more explicit than in *Gecht*. Moreover, there is a "reasonably good chance" that either Plaintiff or Defendants or both may attempt to introduce evidence regarding the *Almodovar* case. Indeed, insofar as *any* Fed. R. Evid. 404(b) evidence is proffered

by Plaintiff in this case against Guevara and/or Halvorsen or is otherwise made the subject of discovery, Defendants may seek to introduce evidence or seek discovery concerning the *Almodovar* matter to rebut claims of a pattern or practice of misconduct by Guevara, Halvorsen or other relevant Defendants given the tenuous nature of the evidence (via so-called "reverse 404(b) evidence"). Defendants seek recusal under 28 U.S.C. § 455(b)(1) as a result of this Your Honor's personal knowledge of certain disputed evidentiary facts and possible perceived bias by a reasonable observer. Moreover, given Your Honor's involvement in a proceeding, which may be the subject of discovery or an evidentiary dispute, recusal pursuant to 28 U.S.C. § 455(a) is also appropriate.

### A. Recusal Under § 455(b)(1).

For identical reasons as set forth in *Gecht*, recusal is appropriate here because Your Honor has knowledge of disputed evidentiary facts under § 455(b)(1).

As explained above, Plaintiff heavily relied upon evidence from the *Almodovar* case as a basis for (successfully) obtaining post-conviction relief. This evidence explicitly included references to Your Honor at numerous points. And, again, the Almodovar case was specifically pitched to the Cook County State's Attorney's Office as a basis for considering vacating Plaintiff's conviction. As a result, there is a high likelihood (if not a veritable certainty) that evidence relating to the *Almodovar* case will need to be addressed in this case to probe into the reasons why Plaintiff's conviction was vacated for the purposes of the "favorable termination" element of Plaintiff's Malicious Prosecution claim. This appears to be the basis that Your Honor recused himself in the *Gecht* case and Your Honor should follow that reasoning again here. Ex. 11 at 15:24-16:11.

For his Malicious Prosecution claim, Plaintiff must establish his prosecution terminated in his favor and was indicative of innocence. *Deng v. Sears, Roebuck & Co.*, 552 F.3d 574, 576 (7th Cir. 2009); *Swick v. Liautaud*, 169 Ill.2d 504 (1996). Plaintiff presumably intends to introduce the vacatur of his conviction in order to satisfy this element. Whether a disposition is truly "indicative of innocence" is a fact intensive inquiry. *See Bass v. Hansen*, 2011 WL 1337092, *2-3 (N.D. Ill. 2011). Defendants are,

thus, permitted to introduce evidence relating to the specific manner and theories on which the criminal termination was procured in order to rebut this element to show that the vacating of the conviction were procured on faulty bases, based on misstatements of evidence, misconduct of the accused or otherwise not truly a favorable termination under the circumstances. *See Aguirre v. City of Chicago*, 382 Ill. App. 3d 89, 97-98 (1st Dist. 2008) (modification of witness testimony from underlying criminal proceeding admissible in civil case); *see also Swick*, 169 Ill.2d at 513 (favorable termination does not exist if it is "the result of an agreement or compromise with the accused, misconduct on the part of the accused for the purpose of preventing trial, mercy requested or accepted by the accused, the institution of new criminal proceedings, or impracticability of bringing the accused to trial."); *Payne v. Maher*, 2015 WL 4483954 (N.D. Ill. 2015). Similarly, for the purposes of a 14th Amendment claim, the totality of the criminal trial record must be examined to determine whether allegedly fabricated or suppressed evidence was material. *United States v. Agurs*, 427 U.S. 97, 114 (1976) (trial record and theories must be examined to determine materiality); *Jimenez v. City of Chicago*, 732 F.3d 710, 719 (7th Cir. 2013) (trial record of underlying prosecution relevant to due process claim).

Plaintiff specifically relied upon Mr. Almodovar's claims as support for a theory that Defendant Guevara had a history of engaging in similar acts of misconduct to arrestees/criminal defendants as a basis for having his conviction vacated. Because Plaintiff alleges a claim for Malicious Prosecution and makes a claim of an unfair trial in violation of the Fourteenth Amendment, the underlying evidence and arguments made by Plaintiff in ultimately obtaining the vacating of his conviction may become relevant separate and apart from the admissibility of evidence under Fed. R. Evid. 404(b) because they relate to a *prima facie* element of several of his claims.

As a result, given Plaintiff's express reference to Defendant Guevara's alleged misconduct in the *Almodovar* case and others as a basis for overturning his conviction, Defendants may be put in a position where they need to establish that the so-called modus operandi evidence of Defendant Guevara set forth in Plaintiff's post-conviction proceeding is evidentiarily flawed or otherwise

inconsistent with the actual facts of those case and others in order to rebut several *prima facie* elements of Plaintiff's underlying claims.

In the event that evidence regarding Mr. Almodovar's case is sought to be admitted by either party (which appears likely), Mr. Saez may be called upon to testify as to his experiences with Defendant Guevara and Mr. Saez's shifting stories will almost certainly be front and center on this evidentiary presentation. However, again, Your Honor personally interviewed Mr. Saez in an extrajudicial capacity and opined as to Saez's credibility as a witness. Your Honor also personally interviewed Mr. Almodovar and opined that Your Honor was "pretty convinced" that Mr. Almodovar was not guilty. In the event evidence about Mr. Almodovar is sought to be introduced, Defendants will likely contend Mr. Saez is not a credible witness as to his accusations against Defendant Guevara and may pursue an evidentiary theory that Mr. Almodovar was, indeed, likely guilty but was the fortuitous recipient of a highly suspicious recantation and a procedural victory unrelated to his actual guilt or innocence. In order to address the circumstances of Mr. Saez's recantation, as noted above, it is highly likely that Your Honor may become directly involved as a witness on this issue. As a result of Your Honor's work on the *Almodovar* case, Your Honor has obtained personal knowledge of disputed evidentiary facts concerning the proceeding which arise from "an extrajudicial source" under § 455(b)(1).

Further, based on the opinions attributed to Your Honor in the Sidley Austin Report about Defendant Guevara's modus operandi of misconduct (whether accurate or not), a reasonable person may be convinced Your Honor is biased. Those attributed statements indicate Your Honor may be inclined to presuppose that Defendant Guevara engaged in the modus operandi of misconduct that has been alleged against him – not only in the *Almodovar* matter, but other cases as well – and exercise discretion to admit such evidence over the objection of Defendants. Moreover, Your Honor has already expressed opinions in an extrajudicial capacity about the veracity of Mr. Almodovar being subjected to a wrongful conviction at the hands of Guevara. Thus, given the severity of such an

allegation, a reasonable observer could find Your Honor unable to fairly and impartially preside over a case involving Guevara making similar allegations. Thus, Your Honor's recusal is appropriate under § 455(b)(1).

**B.     Recusal Under § 455(a).**

In this case, recusal is also appropriate under 28 U.S.C. § 455(a) because a well-informed, thoughtful observer might reasonably question Your Honor's impartiality in ruling on the admissibility or inadmissibility of evidence (as well as the discoverability of same) concerning both Mr. Almodovar's case in particular and the pattern and practice allegations and evidence against Guevara in general. Given that Plaintiff's allegations and Mr. Almodovar's allegations against Guevara and Halvorsen both involve allegations of coercing witnesses, false reports and testimony, and *Brady* due process violations and given Plaintiff's explicit reference to Mr. Almodovar in the Complaint, Mr. Almodovar (and other witnesses relating to his underlying case including Your Honor) may be 404(b) or *Monell* witnesses during discovery in this case or witnesses at trial.

Evidence about Guevara's specific interaction with Mr. Saez, or Mr. Saez himself as a witness, may be offered as evidence in this case. In Plaintiff's Petition for Post-Conviction Relief, Plaintiff contends Guevara "manipulated the false identification of Kennelly Saez," which led to the alleged wrongful conviction of Mr. Almodovar. *See* Ex. 13 at ¶¶ 113, 166, Ex. U. Defendants, of course, intend to oppose such a contention. Reviewing courts have consistently found Mr. Saez's post-trial testimony and three separate recantations incredible. *See e.g., Almodovar*, 2013 IL App (1st) 101476 at ¶¶ 53, 56, 74.[2] Defendants may use the evidence on which these courts relied to rebut the "pattern" allegations

---

[2] Mr. Saez originally testified that Guevara did not tell him who to pick before he identified Almodovar and his co-defendant in a lineup; next, Mr. Saez recanted his identification to Almodovar's then-attorney Melinda Power; Saez then testified that his recantation to Ms. Power was a lie, and that a gang leader had told him to say that he could not identify the shooters; Mr. Saez then later testified that in the presence of the other eyewitnesses (Jackie Grande), he saw shown photos of Almodovar and his co-defendant to influence his lineup identification and was told not to mention being shown the photos. *Id.* at ¶¶ 12-14, 39, 42-45. In contrast, Ms. Grande testified she was only once shown a photo array but never told which photos to pick, was sure the persons she picked (including Almodovar) were the right persons, and never in her presence was Mr. Saez shown photographs or told who to pick. *Id.* at ¶¶ 15-18, 48-49.

against Guevara and also specifically to attack the credibility of Mr. Saez as to his recantation and Mr. Almodovar in general. In other words, even if Plaintiff decides not to affirmatively introduce evidence concerning the *Almodovar* case but is permitted to introduce *other evidence* under Rule 404(b) or seek discovery into same, Defendants may nonetheless seek discovery or to introduce evidence concerning Mr. Saez and the *Almodovar* case.

The most acute problem here is that Your Honor personally interviewed Mr. Saez and reportedly found him to be credible. Your Honor also opined about Mr. Almodovar that he was "pretty convinced" that Mr. Almodovar was not guilty and, thus, the insinuation is that Your Honor concluded that Mr. Almodovar had been wrongfully convicted. Given this evidence and Your Honor's statements regarding same, there is a reasonable basis to question the appearance of impartiality in ruling on issues relating to this same evidence.

In the event that this evidence is the subject of discovery or potential admission at trial, there is a very strong likelihood that Your Honor could be an *actual witness*. Again, Defendants are in a position where they will need to challenge the veracity and credibility of Mr. Saez and Your Honor was personally privy to one of his ever-changing statements via its communication with Mr. Saez and, in fact, made observations and reached conclusions about the veracity and credibility of same. Suffice it to say, it would be exceedingly problematic for Your Honor to serve as both a corroborating witness for a recantation and a judge in the same proceeding where this recantation is being challenged.

Even if a reasonable person would not question Your Honor's impartiality based on the above factors when considered separately, a thoughtful observer could come to the conclusion when those factors are considered together. For example, in *Fairley v. Andrews*, 423 F. Supp. 2d 800 (N.D. Ill. 2006), Judge Castillo found that none of his "individual statements, when viewed in their proper context, warrant[ed] recusal under section 455(a)." *Id.* at 821. "However, in doing the required self-evaluation under this section," Judge Castillo also found "that all of this Court's statements and interactions with Defendants in this case, *taken together*, may give pause to a non-legal observer, not versed in the ways

18

of the courtroom and the risks of litigation." *Id.* (emphasis added). Judge Castillo therefore concluded that "the reasonable person standard under section 455(a) has been satisfied and that this Court's recusal is required." *Id.* This was especially true where "reasonable minds may disagree as to whether recusal is appropriate in this matter under section 455(a)," because "'outside observers are less inclined to credit judges' impartiality and mental discipline than the judiciary itself will be.'" *Id.* at 820-21. These same considerations apply here.

Like *Serrano* and *Gecht* there is a "reasonably good chance" that Your Honor may have to decide the admissibility of evidence regarding a case in which Your Honor participated as counsel. Moreover, given Your Honor's status as a witness in the *Almodovar* case, there is a distinct possibility that Your Honor could be called as a witness at trial in that case while the present case is pending. Accordingly, Your Honor's reasoning for its own recusal in *Serrano* and *Gecht* are even more compelling in this case.

## CONCLUSION

WHEREFORE for the reasons stated above, Defendants respectfully request Your Honor recuse himself from this case pursuant to 28 U.S.C. § 455(a) or pursuant to 28 U.S.C. § 455(b)(1), and for whatever other relief this Court deems fit.

Respectfully submitted,

By: /s/ Timothy P. Scahill
Special Assistant Corporation Counsel
Timothy P. Scahill
Steven B. Borkan
Misha Itchhaporia
Whitney Hutchinson
Molly Boekeloo
Borkan & Scahill, Ltd.
20 S. Clark Street, Suite 1700
Chicago, Illinois 60603
(312) 580-1030
*Attorneys for Reynaldo Guevara*

By: /s/ Eileen E. Rosen
Special Assistant Corporation Counsel
Eileen E. Rosen
Catherine M. Barber
Theresa Berousek Carney
Austin G. Rahe
Rock Fusco & Connelly, LLC
333 W. Wacker 19th Floor
Chicago, Illinois 60606
(312) 494-1000
*Attorneys for Defendant City of Chicago*

By: /s/ Josh M. Engquist
Special Assistant Corporation Counsel
James G. Sotos
Josh M. Engquist
Jeffrey R. Kivetz
Allison L. Romelfanger
Elizabeth R. Fleming
Kyle T. Christie
Mark F. Smolens
THE SOTOS LAW FIRM, P.C.
141 W. Jackson Blvd., Suite 1240A
Chicago, IL 60604
Tel: (630) 735-3300
*Attorneys for Defendants William Johnson, Geri Lynn Yanow, as Special Representative for Ernest Halvorsen, Ronald Koncz, Edward Mingey, John Santopadre, Joe Rodriguez and Eddie Wiora*