**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CARLOS ANDINO, | ) | |
| | ) | |
| Plaintiff, | ) | No. 23-cv-14283 |
| | ) | |
| v. | ) | District Judge Jeremy C. Daniel |
| | ) | Magistrate Judge Keri L. Holleb Hotaling |
| REYNALDO GUEVARA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

This matter comes before the Court on Defendants' Motion to Compel [Dkt. 225] non-party witness Salvador Ponce to testify in a continued deposition in this civil case. Ponce has not filed a brief in this matter, but Plaintiff has filed a brief in opposition to Defendant's motion [Dkt. 226]. Defendants' motion to compel [Dkt. 225] is denied for the reasons set forth below.

According to Plaintiff, non-party witness Salvador Ponce was an original suspect of the murder of Mark Dibicki on April 11, 1994. [Dkt. 226 at 1-3.] Ponce was apparently an original suspect based on an alleged third-party admission he made in April 1994. [*Id*.; *see also* Dkt. 226 at 8 (citing Dkts. 226-2 and 226-3 concerning that admission).] Ponce, a minor at the time, was arrested two days after the murder, taken to Chicago Police Department Area 5 police station and questioned about the murder. [*Id*.] According to police reports, Ponce had an "alibi" for the time of the murder, that he was visiting his brother at Cook County Jail.[1] [*Id*.] Ponce was released without being charged. [*Id*.]

Both Plaintiff and Defendants disclosed Ponce as a witness who may testify to his

---

[1]     According to Plaintiff, there is no evidence Ponce was at Cook County Jail on the date of the Dibicki murder, April 11, 1994. [Dkt. 226 at 9; Dkt. 226-4.] In fact, during the criminal proceeding, Plaintiff's criminal defense attorney obtained the records from Cook County Jail, which did not corroborate Ponce's claim he was at Cook County Jail at the time of the Dibicki murder. "Judge, I subpoenaed the records from Division 9. Clearly, they do not – I could show you the records, they do not have Salvadore Ponce signed in visiting anyone on April 11[, 1994]." [Dkt. 226-2, at 1238:2-11.]

observations involving the murder of Mark Dibicki. [*Id*.] On February 25, 2026, Ponce was deposed via Zoom in this matter [*id*.], pursuant to a deposition subpoena purportedly served by Defendant Guevara upon Ponce on February 19, 2026. [Dkt. 225-7.][2] During his deposition, Ponce invoked his Fifth Amendment right in response to questions about his knowledge or involvement in the Dibicki murder and his teardrop tattoo.[3] [Dkt. 225-4.]

Some forty-seven days after Ponce's February 25, 2026 deposition, on the non-Monell discovery deadline of April 13, 2026, at 8:54 PM, Defendants filed a motion to compel Ponce's continued deposition. [Dkt. 217]. The Court denied that motion the next day for "fail[ing] to meet and confer per Local Rule 37.2 and Judge Holleb Hotaling's Standing Order on Discovery Motions." [Dkt. 218.] The Court reminded Defendants that for the Rule 37.2 conference, "Judge Holleb Hotaling prefers a face-to-face meeting, which may be satisfied by videoconference." [*Id*.] Defendants waited nine more days until April 23, 2026 to contact Plaintiff, emailing Plaintiff's counsel to "advise of your position on this motion so we can add it and refile?" [Dkt. 226-1.] The instant motion was then filed eleven days after the close of non-Monell fact discovery, on April 24, 2026. [Dkt. 225.]

This motion is indeed untimely, without explanation for its delay. There also is, confoundingly, no explanation for the failure to comply with Local Rule 37.2 and Judge Holleb Hotaling's Standing Order on Discovery Motions, particularly when specifically cautioned by the Court about the same. [Dkt. 218.] However, the Court will address this motion on its merits, which is a separate reason for denial.

---

[2]    The deposition subpoena itself does not appear as part of Defendants' exhibits, just the proof of service for the same. But this is of no moment, as Ponce appeared for his deposition.

[3]    Plaintiff contends that the teardrop tattoo is "the now-known identifying feature of the perpetrator that Defendants allegedly concealed" [Dkt. 226 at 2], which is a central issue in the instant litigation. As Plaintiff puts it: three eyewitnesses, who were children at the time of the murder, have since come forward and testified and submitted affidavits that the perpetrator of the Dibicki murder had a teardrop tattoo on his face, which they told Defendants at the time and Defendants concealed to frame Plaintiff. [*Id*. at 9-10.]

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that a party may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). "Privilege, thus, is one of the limitations to obtaining information about relevant matters." *DeLeon-Reyes v. Guevara*, No. 18-cv-1028, 2020 WL 5800727, at *2 (N.D. Ill. Sept. 29, 2020). Here, Ponce invoked his Fifth Amendment privilege against self-incrimination in response to numerous questions about the Dibicki murder, and Defendants now seek to compel him to answer those questions. In *DeLeon-Reyes*, then-Magistrate Judge (now District Judge) Harjani compelled the deponent, Mejia (who had nearly two decades prior to the deposition in question pled guilty to two counts of first-degree murder, two counts of aggravated kidnapping, and one count of home invasion, *DeLeon-Reyes* at *1), to testify, finding that her invocation of the Fifth Amendment privilege against self-incrimination to shield her from potential prosecution for perjury for lying in the past lacked merit because the statute of limitations for perjury under both Illinois and federal law had long since passed. *DeLeon-Reyes* at *3-5.

Unlike *DeLeon-Reyes*, Defendants do not assert that there is no risk of further prosecution to Ponce related to the Dibicki homicide. While Defendants are correct that the parties (and the Court) have "been left to speculate as to the basis for [the] invocation" of Ponce's Fifth Amendment rights [Dkt. 225 at 7], it is not a stretch for the Court to determine that answers to the questions asked of Ponce in his short February 25, 2026 deposition could potentially be used against Ponce in a criminal prosecution. For example, Ponce was asked about the alibi he gave to detectives for the time of the Dibicki murder (not under oath, and therefore not analogous to the *DeLeon-Reyes* perjury situation) [Dkt. 225-4 at 11:9-12:5]; he was questioned about his teardrop tattoo and when he acquired the same [*id*. at 8:24-9:18]; and he was questioned directly about whether he "participat[ed] in the homicide of Mark Dibicki on April 11, 1994 at 3735 W. Fullerton" [*id*. at 17:4-8; *see also id*.

3

at 16:17-17:3 (regarding his teardrop tattoo and where Ponce was during the Dibicki homicide)].

So, while perhaps it was inartful for the unrepresented Ponce to not fully specify the basis under which he was invoking his Fifth Amendment rights, such is not required of him under the law.

The Fifth Amendment provides that "[n]o person…shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The right "reflects a complex of our fundamental values and aspirations, and marks an important advance in the development of our liberty." *Kastigar v. United States*, 406 U.S. 441, 444 (1972). It can be asserted in any proceeding, *id*., and must be construed broadly "to assure that an individual is not compelled to produce evidence which later may be used against him as an accused in a criminal action." *Maness v. Meyers,* 419 U.S. 449, 461 (1975) (citations omitted). The privilege "not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime." *Hoffman v. United States*, 341 U.S. 479, 486 (1951). The right to assert the Fifth Amendment privilege depends upon the *possibility*, not the likelihood of prosecution. *In re Folding Carton Antitrust Litig.*, 609 F.2d 867, 871-72 (7th Cir. 1979) (per curiam) (emphasis added). A witness is not required to prove the possibility of prosecution, so whenever "there is *any basis* for a prosecution, the Fifth Amendment protection applies." *In re Corrugated Container Antitrust Litig.,* 661 F.2d 1145, 1152 (7th Cir. 1981) (emphasis added), aff'd sub nom. *Pillsbury Co. v. Conboy*, 459 U.S. 248, (1983). The possibility of prosecution is foreclosed only by the existence of an "'absolute bar to subsequent prosecution,' such as 'states of limitations, immunity, and double jeopardy.'" *DeLeon-Reyes* at *3 (citing *In re Corrugated Container* 661 F.2d at 1151). This inquiry should focus "on what a truthful answer might disclose, rather than on what information is expected by the questioner." *Zicarelli v. NJ State Comm'n of Investigation*, 406 U.S. 472, 480 (1972).

As Plaintiff rightly notes, "Defendants do not know whether Ponce's truthful answers may

4

incriminate or link him to the Dibicki murder, or any other crime, nor can the Court." [Dkt. 226 at 6.] Defendants' assertion that Ponce has "no present reasonable fear of prosecution" [Dkt. 225 at 8] is simply baldly wrong (and the Court further finds it to be disingenuous). Defendants *cannot* know that to be true (as Plaintiff points out, Defendants are retired police officers, not prosecutors). As the Court sees it, there is no 'absolute bar to subsequent prosecution' at play here. *DeLeon-Reyes* at *3. As *DeLeon-Reyes* notes, "only a small subset of crimes in Illinois are subject to no statute of limitations [under] 720 ILCS 5/3-5(a). Those crimes are: (1) First degree murder; (2) Attempt to commit first degree murder; (3) Second degree murder; (4) Involuntary manslaughter; (5) Reckless homicide…" *Id*. Ponce has never, in contrast to the deponent in *DeLeon-Reyes*, been charged, let alone pled guilty, to the unsolved Dibicki murder. There is no absolute bar to a future prosecution for Ponce; for Ponce, prosecution remains possible. *In re Folding Carton*, 609 F.2d at 871 (holding the protection of the Fifth Amendment applies so long as there is a possibility of prosecution, regardless of a judge's assessment of the likelihood of prosecution.)

In sum, the Court finds that Ponce does indeed bear a reasonable risk of further prosecution and properly invoked the protections of the Fifth Amendment privilege against self-incrimination. The Court cannot and will not strip Ponce of his Fifth Amendment protections and compel Ponce to sit for a continued deposition under these circumstances. Defendants' motion to compel [Dkt. 225] is therefore denied. To the extent Defendants have made Ponce aware of this motion to compel, they are to provide him with a copy of this Order.

**Date: July 10, 2026**

_____
Hon. Keri L. Holleb Hotaling,
United States Magistrate Judge

5